STATE OF MINNESOTA

IN SUPREME COURT

A14-1180

Court of Appeals                                                           Lillehaug, J.
                                     Concurring in part and dissenting in part, Dietzen, J.,
                                                       Gildea, C.J., and Stras, J.


Jennifer L. DeCook, et al.,

               Respondents/Cross-Appellants,

vs.                                                              Filed: February 17, 2016
                                                                Office of Appellate Courts

Olmsted Medical Center, Inc., Brenda J. Hanson, R.N., and Darlene M. Pratt, R.N.,

               Appellants/Cross-Respondents,

Kenneth M. Palmer, M.D., Jack F. Perrone, M.D., Kimberly McKeon, M.D., and Ashley Morrow, R.N.,

               Cross-Respondents.

_____

Kay Nord Hunt, Lommen Abdo, PA, Minneapolis, Minnesota, and Patrick A. Thronson, Janet, Jenner & Suggs, LLC, Baltimore, Maryland, for respondents/cross-appellants.

Mark A. Solheim, Paula Duggan Vraa, Margaret Jennings Meier, Larson King LLP, Saint Paul, Minnesota, for appellants/cross-respondents and cross-respondent Morrow.

Douglas S. Knott, Samuel J. Leib, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Milwaukee, Wisconsin for cross-respondent Palmer.

Robert G. Benner, Dunlap & Seeger, P.A., Rochester, Minnesota, and Peter G. Syregelas, Pretzel & Stouffer, Chartered, Chicago, Illinois, for cross-respondents Perrone and McKeon.

1

Mark R. Bradford, Frank Aba-Onu, Bassford Remele, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

S Y L L A B U S

1.    A summons and complaint that are defective because they are signed by an attorney who is not licensed to practice in Minnesota are not void and may, in the district court's discretion, be cured by amendment.

2.    Because the plaintiffs produced evidence of service and the defendants did not satisfy their burden to prove that service was not effective, the district court erred in granting the defendants' motion to dismiss for insufficient service.

O P I N I O N

LILLEHAUG, Justice.

In this appeal from the denial of a motion to dismiss for insufficiency of process, we consider the question of whether a summons and complaint signed by an attorney licensed outside the state of Minnesota are legal nullities, or whether the defective signature may be cured. In the related conditional cross-appeal, we consider whether the district court erred in granting a motion to dismiss as to several defendants for insufficiency of service. Because we conclude that the Minnesota Rules of Civil Procedure afford a district court the discretion to allow an amendment to cure a defective signature on a summons and complaint, we affirm the court of appeals' judgment in part. However, because we conclude that the plaintiffs produced sufficient evidence of

effective service to shift the burden to the defendants to prove that service was not effective and that burden was not carried, we reverse in part.

I.

On January 22, 2010, Mya DeCook—the daughter of Jennifer and Ryan DeCook—was born at Olmsted Medical Center (the Medical Center) in Rochester. In January 2014, Stephen Offutt and Patrick Thronson, attorneys for the DeCooks, contacted the Medical Center's risk management department to discuss how to serve process upon the Medical Center and the doctors and nurses involved in Mya's birth in order to commence a medical malpractice suit.[1] Though the record does not reflect that the attorneys contacted the doctors and nurses themselves, the Medical Center's compliance officer, Barbara Graham, told the attorneys that, "if by email, I am authorized to accept service for the 3 physicians [Palmer, Perrone, and McKeon] . . . and for the 2 named nurses [Hanson and Pratt]."

At that time, the identity of Nurse Morrow was unknown, and she was listed on the case caption as "Jane Doe, R.N." After Graham determined that Jane Doe was in fact Nurse Morrow, Graham contacted Offutt and inquired about revising the caption to add Morrow's name. In that email, Graham also confirmed that she had obtained Morrow's authorization for Graham to accept service of process, stating that Morrow "has given me her ok to accept service for her."

---

[1] The statute of limitations for medical malpractice claims is 4 years. Minn. Stat. § 541.076(b) (2014). The record does not show, nor is it relevant to this appeal, when the DeCooks realized they might have a claim or when they retained attorneys to pursue it.

3

Relying on Graham's representations, the DeCooks' attorneys attempted to serve the Medical Center and the six individual defendants by emailing a copy of the summons and complaint to Graham on January 14, 2014. Although the signature blocks in the summons and complaint bore the printed names of both Offutt (licensed to practice in Minnesota) and Thronson (licensed only in Maryland), the documents were signed only by Thronson. Graham signed and returned an acceptance of service form on January 15, stating: "I, Barbara Graham, R.N., Compliance Office of Olmsted Medical Center, hereby admit and accept service …. on behalf of" the Medical Center and each of the six individual defendants.

On January 31, 2014, all defendants filed a Joint and Separate Motion to Dismiss based on Minn. R. Civ. P. 12.02(b) (lack of personal jurisdiction), (c) (insufficient process), and (d) (insufficient service of process). Thronson contacted the attorney who filed the motion in an attempt to learn more, but was unsuccessful. Thronson and Offutt, concerned by the motion, sent copies of the summons and complaint (still signed only by Thronson) to the appropriate sheriff's offices for personal service upon the defendants. Sheriff's deputies personally served Nurse Pratt on February 24 and Nurse Hanson on February 27. Also on February 27, a sheriff's deputy attempted to serve the remaining defendants by leaving copies of the process at the Medical Center with an employee.

The defendants filed a memorandum in support of their motion to dismiss on March 4, 2014, arguing that the summons and complaint were void because they contained only Thronson's signature, that the defendants were never served personally, and that the purported service via email was ineffective. The defendants filed affidavits

4

from Graham in support of the motion. Neither of Graham's two affidavits denied that the six individual defendants had authorized her to accept service of process by email on their behalf, and no defendant filed an affidavit denying that he or she had given Graham such authorization. In response, Offutt promptly appended his signature to a copy of the summons and complaint, and the amended summons and complaint were again mailed to the appropriate sheriffs for service. Again, Pratt and Hanson were personally served, and the process for the remaining defendants was left with an employee at the Medical Center.

The district court denied the motions to dismiss for insufficient process, reasoning that, although the summons and complaint were defective due to the lack of a Minnesota attorney's signature, the Rules of Civil Procedure granted the court discretion to allow the summons and complaint to be cured by amendment, which the court allowed. The court also denied the motions to dismiss for insufficient service of process as to the Medical Center, Pratt, and Hanson, but granted the motions with respect to the remaining defendants.[2] The court found that Pratt and Hanson had been personally served in accordance with Minn. R. Civ. P. 4.03, and that the Medical Center had been validly served through the email to Graham.[3]

---

[2] The district court also denied the defendants' motion to dismiss for lack of personal jurisdiction, concluding that no legal argument separate from the insufficient process and insufficient service arguments supported the motion.

[3] The Medical Center does not argue on appeal that the emailed service of process upon it through Graham was insufficient.

5

The Medical Center, Pratt, and Hanson appealed, arguing that the summons and complaint were legal nullities and that the court erred in allowing the DeCooks to amend them. The DeCooks filed a cross-appeal, arguing that the district court erred in concluding that the January 14 email to Graham did not constitute effective service upon the six individual defendants. The court of appeals affirmed, *DeCook v. Olmsted Med. Ctr.*, No. A14-1180, 2015 WL 1880319 (Minn. App. Apr. 27, 2015), and we granted review of both appeals.[4]

II.

We turn first to the issue of whether a summons and a complaint signed by an attorney not licensed in Minnesota are legal nullities. Answering this question requires us to interpret Minnesota's Rules of Civil Procedure and applicable statutes. Such interpretation presents questions of law which we review de novo. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014).

A.

The Minnesota rules of court are clear on the need for pleadings such as a complaint to be signed by an attorney licensed in Minnesota. *See* Minn. R. Civ. P. 11.01; Minn. Gen. R. Prac. 5. A complaint lacking the signature of a Minnesota attorney is defective. The rules also require a summons to be "subscribed by the plaintiff or by the plaintiff's attorney." Minn. R. Civ. P. 4.01. In keeping with statutory requirements that

---

[4] The remaining individual defendants, Palmer, Perrone, McKeon, and Morrow appeared in this appeal as respondents to the DeCooks' appeal. For simplicity, we refer to the Medical Center and the individual defendants collectively as "the defendants."

6

attorneys not licensed in Minnesota may not practice in the state, *see* Minn. Stat. § 481.02, we conclude that the Rule 4.01 imperative that a summons be subscribed by the plaintiff "or by the plaintiff's attorney" requires that a summons not subscribed by the plaintiff be subscribed by an attorney licensed to practice in Minnesota. Accordingly, a summons is defective if it is not subscribed by either the plaintiff or an attorney licensed to practice law in Minnesota. Here, both the summons and the complaint were defective.

B.

Citing our decision in *Herrick v. Morrill*, 37 Minn. 250, 252, 33 N.W. 849, 850 (1887), the DeCooks argue that the summons was not defective at all because Offutt's printed name on the summons' signature block constituted a valid "subscription" of the summons. This argument was not made at the court of appeals and thus is arguably forfeited here. In the interests of clarifying the law for Minnesota practitioners, however, we choose to address it. *Herrick*'s analysis is not applicable here, as *Herrick* was decided many decades before the effective date (1952) of the Minnesota Rules of Civil Procedure, which apply here.

Minnesota Rule of Civil Procedure 4.01 requires a summons to be "subscribed by the plaintiff or by the plaintiff's attorney." "Subscribed" means "signed." *See The American Heritage Dictionary* 1737 (5th ed. 2011) ("to sign (one's name) at the end of a document . . . ."); *Black's Law Dictionary* 1655 (10th ed. 2014) (containing four relevant definitions, all of which contemplate a written signature). Further, Rule 11.01 requires "[e]very pleading, written motion, and other similar document" to be "signed by at least one attorney of record in the attorney's individual name" if the party is represented.

7

Minn. R. Civ. P. 11.01. Even if a summons is not a "similar document" to a pleading or motion such that it is covered by Rule 11, no good reason exists for different rules to govern a summons as opposed to all other important court documents. We conclude that Rule 4.01's subscription requirement means the summons must be signed.

The DeCooks also argue that the complaint was not defective, as Offutt ratified Thronson's signature on the complaint by instructing Thronson to sign Offutt's name for him. Assuming, again, that this argument is not forfeited, it fails. Offutt's instruction—which was not followed—cannot constitute ratification, as the instruction occurred prior to the unauthorized act the DeCooks now contend was ratified. *See Anderson v. First Nat'l Bank of Pine City*, 303 Minn. 408, 410, 228 N.W.2d 257, 259 (1975). Therefore, we reject the DeCooks' theories that the summons and the complaint were not defective.

## C.

Minnesota's Rules of Civil Procedure specifically grant district courts the authority "in [their] discretion and on such terms as [they] deem[ ] just" to "allow any summons or other process . . . to be amended, unless it clearly appears that substantial rights" would be prejudiced by the amendment. Minn. R. Civ. P. 4.07. This broad discretion encompasses the power to allow a signature defect on the summons to be remedied. Further, Rule 11.01 provides that "[a]n unsigned document shall be stricken *unless omission of the signature is corrected promptly after being called to the attention of the attorney or party*." Minn. R. Civ. P. 11.01 (emphasis added).

Despite these applicable rules, the defendants and amicus argue that the summons and complaint were void and therefore could not be amended because the signature

8

defect is jurisdictional. They argue that attorneys unlicensed in Minnesota have no authority to commence actions in Minnesota courts, and that because service of a valid summons confers personal jurisdiction over the defendant, *see Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008), service of a summons signed by an out-of-state attorney does not commence an action at all. Therefore, they argue, the district court could not allow amendment of the summons and complaint because no valid summons and complaint existed to be amended.

This position is at odds with the policies underlying the Rules of Civil Procedure and the way we have previously addressed the amendment of defective summonses and complaints. We have repeatedly interpreted the rules regarding the court's acquisition of jurisdiction by summons liberally "to avoid defeating an action merely because of technical and formal defects which could not reasonably have misled or prejudiced a defendant." *See Nelson v. Glenwood Hills Hosps.*, 240 Minn. 505, 511, 62 N.W.2d 73, 77 (1953). Accordingly, as reflected in the Rules of Civil Procedure, "amendment should be granted freely when justice so requires." *Id.* at 513, 62 N.W.2d at 78. To allow amendment of a summons and complaint if the opposing party has not been prejudiced by the defect ensures that the rules help "effect the settlement of controversies upon their merits rather than . . . by dismissal on technical grounds." *Indep. Sch. Dist. No. 273 v. Gross*, 291 Minn. 158, 165, 190 N.W.2d 651, 656 (1971).

Further, in other circumstances in which personal jurisdiction would otherwise not exist because of defective process, we have held that "[i]f service of summons and complaint results in an intended defendant being fully informed as to the circumstances

9

of the action, the court has acquired sufficient jurisdiction over that defendant, even though an amendment is necessary to correct" the defect. *Nelson*, 240 Minn. at 513, 62 N.W.2d at 78. If a summons and complaint that name the wrong entity as a defendant in the lawsuit are correctable, *see id.*, so should be a summons and complaint with signature defects. Indeed, in a closely analogous case, we held that a complaint signed by a non-attorney could be amended. *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 310-11 (Minn. 2005). In doing so, we specifically rejected the contention that the signature defect made the complaint a legal nullity. *Id.*; *cf. Becker v. Montgomery*, 532 U.S. 757, 768 (2001) (concluding that where a notice of appeal lacked the required signature, the defect was curable, particularly where the rule in question specifically provided for correction of an omitted signature).

The defendants place great reliance on our decision in *Francis v. Knerr*, 149 Minn. 122, 182 N.W. 988 (1921), arguing that it requires us to hold that the summons and complaint here were nullities. However, *Francis* is distinguishable. First, it was decided three decades before the adoption of the Rules of Civil Procedure, which we interpret today. Second, the *Francis* court declared the summons in that case void not simply because it bore the signature of an out-of-state attorney, but because that attorney's "untrue and misleading" misrepresentation of having an office in Minnesota prejudiced the defendant's ability to answer the complaint. *Id.* at 125-26, 182 N.W. at 989-90. That is not the case here.

Finally, the defendants and amicus point to a variety of statutes and rules that forbid out-of-state attorneys from practicing law in Minnesota. *See*, *e.g.*, Minn. Stat.

10

§ 481.02, subd. 1 (2014); Minn. Gen. R. Prac. 5 (stating that out-of-state lawyers may appear in Minnesota courts "provided . . . the pleadings are also signed by a lawyer duly admitted to practice in the State of Minnesota"). They argue that only a holding that the summons and complaint are void will deter the unauthorized practice of law in Minnesota and satisfy our constitutional duty to regulate the legal profession.

However, our duties include not only regulating the profession but also "granting liberal relief when an innocent party would otherwise be prejudiced by his attorney's neglect." *Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 490 (Minn. 1997). Further, deterrents to the unauthorized practice of law already exist in the form of criminal prosecution and civil liability. It is doubtful that dismissing the DeCooks' case would further heighten awareness by out-of-state attorneys of our practice requirements.

D.

As the defective summons and complaint are not void, next we determine whether the district court abused its discretion in allowing them to be amended. Whether to allow a party to amend a summons and complaint is within the discretion of the district court, so we will review that decision for an abuse of discretion. *See* Minn. R. Civ. P. 4.07; *Nelson*, 240 Minn. at 516, 62 N.W.2d at 80.

The defendants urge us to apply the test for amendment that we adopted in *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 310-11 (Minn. 2005). They contend that, if the *Save Our Creeks* test is applied, the district court abused its discretion by allowing amendment. The DeCooks argue (1) that no specific test is needed other than the requirements of Rule 11.01; (2) that, if a specific test is needed to guide the

11

court's analysis, we should adopt the test applied to motions to set aside a judgment for an attorney's failure to comply with a procedural rule, *see Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964); and (3) that they nonetheless satisfy all the factors in the *Save Our Creeks* test.

Neither test proposed by the parties applies smoothly to the type of signature defect before us, and given the relative rarity of this particular defect, we see no need to fashion a specific test to guide district courts' discretion. The rules already provide sufficient guidance. Rule 11.01 requires that the defect be promptly corrected. Rule 4.07 only allows amendment of a summons if "it clearly appears that substantial rights . . . [will not] be prejudiced." Both Rule 4.07 and Rule 15.01, which governs amendment of pleadings, require a court to consider whether allowing the amendment will serve the ends of justice. The district court may consider these standards when it exercises its sound discretion in deciding whether to allow amendment.

In this case, the district court did not abuse its discretion in allowing the amendment to cure the signature. In accord with Rule 11.01, the defect was promptly corrected once it was brought to the attention of the DeCooks. Regarding the requirements of Rule 4.07 and Rule 15.01, the lack of a Minnesota attorney's signature on the complaint cannot be said to have prejudiced the defendants' ability to answer or

undermined the ends of justice in any way.[5]  Given these circumstances, the district court's decision to allow the amendment was not an abuse of discretion.

III.

Because the defective summons and complaint were cured, we must address the conditional cross-appeal brought by the DeCooks.  The DeCooks argue that the district court erred in granting the motion to dismiss for insufficient service as to individual defendants Palmer, Perrone, McKeon, and Morrow.   The DeCooks contend that service was effective upon all of the defendants (including the Medical Center, Hanson, and Pratt) as of January 15, 2014—the day the Medical Center's compliance officer, Barbara Graham, returned the acceptance of service form on behalf of all of the defendants.

Whether service of process was effective, and personal jurisdiction therefore exists, is a question of law that this court reviews de novo.  *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008).  We apply the facts as found by the district court unless those findings are clearly erroneous.  *Id.*

In this case, we will assume, without deciding, that the DeCooks' method of serving the summons and complaint on Graham, absent an agreement with the defendants, did not comply with the requirements of Rule 4.  Thus, we turn to the DeCooks' argument that service was effective because it was made pursuant to agreement.  The DeCooks contend that the individual defendants consented to alternative,

---

[5]     Indeed, the defendants' sole argument that the amendment prejudiced them is based on the loss of a statute of limitations defense.  However, loss of such a defense does not on its own constitute the type of prejudice contemplated by the rules regarding amendment and relation back.  *See Nelson*, 240 Minn. at 512-16, 62 N.W.2d at 78-80.

13

or informal, service; specifically, that they agreed to be served with the summons and complaint by email through Barbara Graham.[6]

An agreement to forego formal service and be served in ways not provided for by rule is allowed in Minnesota. Indeed, a defendant may waive service altogether. *See Chauncey v. Wass*, 35 Minn. 1, 15, 30 N.W. 826, 831 (1886). Every business day, on behalf of their clients, Minnesota lawyers[7] enter into agreements consenting to receive service in ways not strictly provided for by rule.[8] In deciding whether the parties had such an agreement here, we must first consider what burden, if any, each party bears.

---

[6] The defendants contend that consent to informal service was not argued previously and, therefore, we should consider the argument forfeited. We disagree. First, the DeCooks have argued at all points of this litigation that the defendants authorized Graham to accept service on their behalf via email. Further, the defendants argued at the district court that "[p]arties may vary the method of service by consent," and connected that argument to waiver of formal service. The DeCooks then renewed their argument that the defendants had waived formal service at the court of appeals. The service-by-consent argument the DeCooks present to us on appeal is not "different in kind" than the arguments presented to the district court and court of appeals, and it is not forfeited. *See Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522-23 (Minn. 2007).

[7] For more than 150 years, Minnesota lawyers have accepted service for clients because they, as agents, have received authority from their principals, the clients, to agree to accept service. *See Masterson v. Le Claire*, 4 Minn. 163, 4 Gil. 108 (1860); *Smith v. Spitzenbarger*, 363 N.W.2d 470, 472 (Minn. App. 1985).

[8] Consistent with that custom and practice, recently our Rules of Civil Procedure were amended to reflect a defendant's right to consent to alternative service methods such as email. Minn. R. Civ. P. 3.01(b); Minn. R. Civ. P. 3.01 advisory comm. cmt.—2015 amendment. In the absence of agreement, of course, email service to commence an action was and is not allowed.

A.

Minnesota law is clear: when service of process is challenged, the plaintiff must submit evidence of effective service. *Shamrock Dev., Inc.*, 754 N.W.2d at 384. "Once the plaintiff submits evidence of service, a defendant . . . has the burden of showing that the service was improper." *Id.*; *see Holmen v. Miller*, 296 Minn. 99, 104, 206 N.W.2d 916, 919 (1973) (explaining that upon submission of an affidavit of service, "a defendant has the burden of proving" the allegations therein are untrue).

A plaintiff's obligation to submit evidence of service, and thereby trigger a defendant's burden to prove insufficient service, is a low hurdle. For instance, in *Holmen*, we held that the sheriff's affidavit, containing the unsupported assertion that a 13-year old was a person of "suitable age and discretion" to accept substitute service, shifted the burden to the defendant to prove that service was ineffective. 296 Minn. at 103-05, 206 N.W.2d at 919-20. In *Shamrock*, we determined that the burden was on the defendant to prove ineffective service when an affidavit supporting service by publication contained the unsupported assertions that the defendant had "left the state with the intent to defraud creditors, or to avoid service." 754 N.W.2d at 384-85.

B.

In this case, the DeCooks did, in fact, submit evidence of service. Specifically, they submitted evidence of an agreement: that, to avoid being served personally, the individual defendants would forego formal service and, instead, be served by email through Graham.

The district court's finding that "[t]here is nothing in the record that supports these individuals authorized Graham to accept service on their behalf" is clearly erroneous. The district court record contains the following evidence: (1) emails from Graham stating that she was authorized to accept service by email on behalf of the defendants, particularly in light of her explicit statement that she had spoken to one of the defendants and obtained authorization directly from that defendant; (2) the affidavits of Graham and Offutt which, taken together, demonstrate that Graham represented that she had been authorized to accept service by the defendants themselves; (3) Graham's emails and affidavit that establish that she is connected to the defendants by her position as the compliance officer at their workplace, which further supports a reasonable inference that she had actual authority from the defendants to accept service of process for them; and (4) the unequivocal acknowledgment of service signed by Graham, expressly on behalf of the defendants, upon receiving the emailed process. All of this is evidence that there was an agreement for alternative service by email through Graham.

With the DeCooks having produced evidence of service by agreement, the burden of proving ineffective service is on the defendants. *Shamrock*, 754 N.W.2d at 384. They have failed to meet their burden. In fact, they submitted *no* contradictory evidence. Not one defendant submitted an affidavit, correspondence with Graham, or any other piece of evidence indicating that any defendant *did not* authorize Graham to agree to accept service. Nor do Graham's affidavits claim that she had not been so authorized. Tellingly, the defendants are silent. Thus, they have not carried their burden to prove

16

insufficient service.[9] The district court therefore erred in granting the defendants' motion to dismiss.

## C.

In spite of the defendants' reticence to admit whether they received service, the dissent argues at length that the district court properly dismissed based on principles of agency. The dissent is correct that apparent authority, standing alone, is not sufficient to bind a purported principal for service-of-process purposes. However, that basic statement of law misses the point because, given that the DeCooks have produced evidence of an agreement, the burden is on the individual defendants to prove that Graham's authority to consent was not actual, but only apparent, and that service was therefore ineffective. Unlike defendants in the cases cited by the dissent, these defendants submitted no affidavits or other evidence denying that Graham had actual authority to accept service for them.

The dissent relies heavily on *Tullis v. Federated Mutual Insurance Co.*, in which we concluded that service upon an occupational therapist was not sufficient to serve a corporation, in part because the therapist had "at most" only apparent authority. 570 N.W.2d 309, 312-13 (Minn. 1997). However, *Tullis* is distinguishable in a crucial way. *Tullis* did not decide whether the plaintiff had submitted evidence to trigger the defendant's burden of proof, but instead decided whether, after such evidence was

---

[9] Because we conclude that the district court erred in granting the defendants' motion to dismiss for insufficient service, we need not address the DeCooks' other arguments that service was effective.

submitted, the defendant had proven insufficient service. Critically, the *Tullis* defendants provided actual evidence contradicting the plaintiff's evidence of service, including an affidavit from the therapist stating specifically that he denied saying that he was authorized to accept service and that the process server never asked whether he was. *See Tullis v. Fed. Mut. Ins. Co.*, 556 N.W.2d 7, 9 (Minn. App. 1996), *rev'd*, 570 N.W.2d 309 (Minn. 1997). By contrast, we hear from these defendants only the sounds of silence.

IV.

In sum, we conclude that the summons and complaint bearing only the signature of an attorney not licensed to practice in Minnesota were defective. That signature defect did not render the summons and complaint void, however, and the district court did not abuse its discretion in allowing them to be amended. Thus, we affirm in part the judgment of the court of appeals.

We further conclude that the district court clearly erred in finding that the record contained no evidence that the defendants consented to service. The DeCooks submitted evidence that the defendants had agreed to be served by email through the Medical Center's compliance officer. Because the DeCooks' evidence of service was wholly unrebutted, the defendants did not satisfy their burden to prove that service was insufficient. Accordingly, we reverse in part the judgment of the court of appeals, and remand to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

18

CONCURRENCE & DISSENT

DIETZEN, Justice (concurring in part, dissenting in part).

I join in Part II of the court's opinion, but disagree with Part III and the related portion of Part IV, and therefore respectfully dissent. In my view, Part III of the court's opinion is contrary to the requirements of Rule 4.05 and the new amendment to Rule 3.01(b) of the Minnesota Rules of Civil Procedure, as well as settled agency law. The above-mentioned rules and this court's agency precedent establish that a writing either signed by the defendant or electronically submitted by the defendant is prima facie evidence of authority to accept service of process. Because both were absent in this case, the district court found there was nothing in the record establishing the authority of an alleged agent to accept service of process on behalf of the individual defendants, and therefore the DeCooks' attempted service was ineffectual. The court ignores the requirements of the rules and our precedent, and reverses the district court's finding on the dubious argument that the representations of an alleged agent (a medical compliance officer) were sufficient to establish prima facie evidence of authority to accept service. Because the court's opinion is contrary to, and significantly undermines, the clear mandate of the rules of civil procedure and settled agency law, I dissent.

I.

On January 8, 2014, with a mere 2 weeks remaining on a 4-year statute of limitations,[1] the DeCooks' legal counsel, Steve Offutt, contacted the Risk Management

---

[1]     Minn. Stat. § 541.076 (2014)

Department of the Olmsted Medical Center (the Medical Center) to discuss service of process on the Medical Center and the individual doctors and nurses. Offutt spoke to Barbara Graham, R.N., the Medical Center's Compliance Officer. Following a phone conversation with Graham—the content of which is unknown—Offutt, and his associate, Patrick Thronson, began corresponding with Graham via e-mail. In an e-mail to Graham dated January 8, 2014, Offutt stated, "I understand you know you can accept for the [Medical Center] and the named doctors I read off to you tonight," and also "that if these nurses still work there then you should be able to accept for them as well." But, he noted,

> I need something back from you that affirms that your job/position at the [Medical Center] allows you to accept service and that you are in fact agreeing to accept service. We will then e-mail you all the documents and send a hard copy to you in the mail. I may need a form filled out and signed.[2]

Offutt also requested that Graham help him identify a particular "Jane Doe" nurse that the DeCooks also wished to serve with process. The next day, Graham e-mailed Offutt, stating that if he was "looking for an in person service," then "we will need to do something different"; but "if by email, I am authorized to accept service for the [then-identified doctors and nurses]." Five days later, upon learning the identity of the Jane Doe nurse, Graham informed Offutt: "[the Jane Doe nurse] has given me her ok to accept service for her." That same day, Thronson attempted to serve Graham by e-mailing her the summons, complaint, and two copies of an acknowledgement form. The next day, Graham personally signed one of the acknowledgment forms and returned it to Thronson.

---

[2]    Offutt, however, never mailed "a hard copy" of the process papers to Graham.

The record provides no evidence that Offutt and Thronson attempted to personally contact the individual defendants to verify whether Graham could accept service or agree to alternative forms of service on their behalf. Nevertheless, Thronson asserted in an affidavit, "I was made to understand that Nurse Graham was authorized by Defendants to accept service of process on behalf of all Defendants," and "I was also made to understand . . . that Defendants would and did accept service by email." The DeCooks, however, presented *no* evidence from the individual defendants indicating that they ever provided *any* authority to Graham relating to service of process. Based on the foregoing, the district court found that "[t]here is *nothing* in the record" substantiating the claim that the individual defendants had in fact "authorized Graham to accept service on their behalf." (Emphasis added.)

## II.

The court relies upon the faulty premise that the representations of an alleged agent are prima facie evidence of authority to accept service of process. But settled agency law rejects this notion, and our rules of civil procedure provide that the plaintiff must establish authority to accept service of process through the submission of a writing either signed by the defendant or electronically submitted by the defendant. *See* Minn. R. Civ. P. 3.01(b); Minn. R. Civ. P. 4.05. The DeCooks did not submit either.

We review de novo whether service of process was effectual. *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008). In doing so, we must apply the factual findings of the district court unless those findings are "clearly erroneous." *Id.* (citing Minn. R. Civ. P. 52.01); *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995) ("Findings of

fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."); *Derrick v. Drolson Co.*, 244 Minn. 144, 154, 69 N.W.2d 124, 131 (1955) (noting that whether the person served was an agent authorized to accept service on behalf of a corporation was "clearly one of fact"). When assessing whether a finding is clearly erroneous, we view the evidence in the record in the light most favorable to the district court's finding. *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012). We do not reject a finding merely because we "view[] the evidence differently." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999). Instead, the finding must be "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quoting *N. States Power Co. v. Lyon Food Prods., Inc.*, 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975)). Simply put, to overturn a finding of fact we must be "left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999)).

It is well-settled that the ultimate burden of proving insufficient service of process is upon the defendant. *Holmen v. Miller*, 296 Minn. 99, 104, 206 N.W.2d 916, 919 (1973). But it is axiomatic that the plaintiff must *first* submit evidence *sufficient* to make out a prima facie case that service was made in an *effective* manner. *See, e.g.*, *id.*; *see also Shamrock*, 754 N.W.2d at 384 ("Once the plaintiff submits evidence of service, a defendant who challenges the sufficiency of service of process has the burden of showing that the service was improper."). In other words, the plaintiff bears the initial burden of production, and the defendant bears the ultimate burden of persuasion. *See Braylock v. Jesson*, 819 N.W.2d 585, 589-90 (Minn. 2012) (concluding that a "prima facie case" and

coming "forward with the evidence" are synonymous, require the same quantum of proof, that defendant's argument to the contrary confused the "burden of production" with the "burden of persuasion," and that "[i]f a party fails to carry its initial burden of production, then the other party does not have to produce any evidence in response, even if the latter party would have the ultimate burden of persuasion").

Service of process may be accomplished, among other methods not relevant here, by personal service or by mail. Minn. R. Civ. P. 4.03(a) (personal service); Minn. R. Civ. P. 4.05 (service by mail). The DeCooks have clearly failed to present any evidence of personal service.[3] Therefore, the DeCooks must satisfy the requirements of Rule 4.05. Under that rule, service "may be made *by mailing* a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, *together with* two copies of a notice and *acknowledgment . . . .*" Minn. R. Civ. P. 4.05 (emphasis added). Further, Rule 4.05 unambiguously provides, if acknowledgment of service "under this rule" is not received within the time permitted by the rule, "service shall be ineffectual." This acknowledgment must be signed "*by the person served.*" *Id.* (emphasis added).

---

[3] *See, e.g.*, *In re J.M.T.*, 759 N.W.2d 406, 408 (Minn. 2009) ("First-class mail, even if received, is simply not personal service. Personal service requires delivery to the party or to an appropriate representative." (citing Minn. R. Civ. P. 4.03)); *Kmart Corp. v. Cty. of Clay*, 711 N.W.2d 485, 489-90 (Minn. 2006) (holding that service was ineffectual because the plaintiff did not deliver copies of the petition to the individual personally or leave copies with any person at the individual's usual places of abode, and because the plaintiff's alternative attempt to serve by facsimile was not authorized by Rule 4); *Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn. 1997) ("Service of process in a manner not authorized by the rule is ineffective service.").

The DeCooks' attempted service did not satisfy our rules of civil procedure, and was therefore ineffectual. The DeCooks failed to provide the district court with a valid acknowledgement of service. Specifically, the acknowledgment was not signed "by the person served," as required under Rule 4.05. Therefore, any attempted service by the DeCooks "under [Rule 4.05]" was "ineffectual." Minn. R. Civ. P. 4.05; *see also Young v. Mt. Hawley Ins. Co.*, 864 F.2d 81, 82 (8th Cir. 1988) (noting that, under the federal rules, the requirements of waiver of service via mail must be "strictly complied with," and that "if the acknowledgment form is not returned, the formal requirements of mail service are not met and personal service must be obtained" (citing *e.g.*, *Worrell v. B.F. Goodrich Co.*, 845 F.2d 840, 841 (9th Cir. 1988) ("[The federal rule for service by mail] plainly states that service fails unless the defendant returns the signed acknowledgment form . . . [and] [v]irtually every court that has examined the rule has reached that same interpretation."))).

The court attempts to sidestep the requirements of Rule 4.05 by concluding that the individual defendants consented to informal service, which the court states is "allowed in Minnesota" due to an alleged "custom and practice"[4] that has now been

---

[4]     I acknowledge that attorneys sometimes accept service of process for their clients. But this court has never held that the mere existence of a "custom" supports a finding of effective service under the rules of civil procedure. Nor does this "custom" change the fact that when a dispute arises, the parties must establish compliance with the rules of civil procedure. Notably, when a dispute arises, the plaintiff must show that the attorney was expressly or impliedly authorized to accept service on the client's behalf. *See Smith v. Spitzenberger*, 363 N.W.2d 470, 472 (Minn. App. 1985) (citing 7A C.J.S. *Attorney & Client* § 196 (1980); *see also United States v. Bosurgi*, 343 F. Supp. 815, 817-18, nn.6-8 (S.D.N.Y. 1972) (citing a multitude of legal authorities holding the same)).

formally recognized by a recent amendment to Rule 3.01(b). As of July 1, 2015, Rule 3.01(b) provides:

> A civil action is commenced against each defendant:
>
> . . .
>
> (b) at the date of acknowledgement of service if service is made by mail or other means *consented to by* the *defendant* either *in writing or electronically*.

(Emphasis added); *see also* Minn. R. Civ. P. 3.01 advisory comm. cmt.—2015 (noting that the amendment "add[s] the explicit provision for consent to service by any means"). This amendment was not in effect on January 14, 2014, the date of the DeCooks' attempted service and, therefore, does not apply to this case. Even if it had been in effect, the DeCooks failed to comply with its terms. Specifically, the DeCooks did not produce a "writing" either signed or "electronically" submitted "by the defendant[s]" indicating that they authorized Graham to accept service or agree to alternative forms of service for them. Minn. R. Civ. P. 3.01(b). By failing to do so, the DeCooks' attempted service was ineffectual and a civil action was never commenced.

Additionally, the DeCooks failed to produce any evidence from the individual defendants establishing that they authorized Graham to accept service, in any form, on their behalf. The DeCooks could have produced an acknowledgment of service signed by "the person[s] served" in accordance with Rule 4.05; or the DeCooks could have produced a writing either signed or electronically submitted "by the defendant[s]" under new Rule 3.01(b). But the DeCooks did not do so. Instead, the DeCooks offered oral evidence by Graham, the alleged agent, which does not satisfy their burden of production.

The court relies on *Holmen v. Miller*, 296 Minn. 99, 206 N.W.2d 916 (1973), and

*Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377 (Minn. 2008), for the proposition that an

affidavit of service containing "unsupported assertions" is sufficient evidence to trigger a

defendant's burden to prove that service was ineffectual.[5]    *Supra* at 15-16.    Even

assuming the court's interpretation of these cases is correct, both cases rely on service

rules that apply to situations entirely inapposite to the case at hand.[6]   And in relying on

---

[5]      In other words, the court concludes that a conclusory, unsupported assertion in an affidavit is enough to create a prima facie case of service.   Although we have not squarely addressed what constitutes a prima facie case in the context of effective service, we have done so in the related context of proving sufficient minimum contacts for purposes of effective service upon a foreign corporation.  *Wuertz v. Garvey*, 287 Minn. 353, 178 N.W.2d 630 (1970).   In *Wuertz*, we held that a plaintiff need only, for the purpose of a pretrial motion, "make a prima facie showing of the described Minnesota-related activities."  *Id.* at 355, 178 N.W.2d at 631.   In considering whether a prima facie case had been made, we explained that the district court "must give every credit to the *facts well pleaded* and the collateral *evidence* supporting it."  *Id.* at 355, 178 N.W.2d at 631-32 (emphasis added) (quoting *Hunt v. Nev. State Bank*, 285 Minn. 77, 117, 172 N.W.2d 292, 315 (1969)).   A conclusory, unsupported assertion is neither a well-pleaded fact nor is it evidence and, therefore, it cannot make out a prima facie case.

[6]      In *Holmen*, we concluded that a process server's subjective assessment that a 13-year old was a person of "suitable age and discretion," affirmed in an affidavit, was enough under Rule 4.03(a) to shift the burden to the defendant to prove otherwise.  296 Minn. at 102-05, 206 N.W.2d at 919-20.   This result was intended to avoid imposing the near impossible burden on the process server of determining close questions of suitable age and discretion.  *Id.* at 105, 206 N.W.2d at 920.  In contrast, one does not subjectively assess whether an individual is an agent duly authorized to accept service on behalf of another, as one would assess "suitable age and discretion."

      *Shamrock* involved whether service by publication under Rule 4.04(a) was conclusively valid merely by submitting an affidavit containing an unsupported, yet "good-faith," allegation that the defendant had left the state with the intent to defraud creditors, avoid service, or remain concealed.  754 N.W.2d at 382-83.  We held that the affidavit, standing alone, was insufficient, and that the district court must find the essential jurisdictional facts "actually exist." *Id.* at 383.  An attempt to prove presence or
                                                                    (Footnote continued on next page.)

these cases, the court ignores an abundance of our precedent that contradicts its conclusion.

Under Rule 4.03(c), we have long applied common law agency principles to service of process upon corporations, which must act and receive service through its duly authorized agents. *Derrick*, 244 Minn. at 152, 69 N.W.2d at 130 ("According to the notes of the Advisory Committee, Rule 4.03(c) was intended to 'permit service upon agents so authorized under common law principles of agency.' "). It logically follows that our Rule 4.03(c) precedent should apply to the service of process issues presented in this case. Based on this jurisprudence, it is plain that the district court's finding was not clearly erroneous.

The court points to Graham's bald assertions that she was authorized to accept service by e-mail for the individual defendants, Graham's position as the compliance officer for the Medical Center, and the acknowledgment of service that Graham personally signed. But, as the district court found, we have never said that this evidence is *sufficient* to establish authority to accept service of process on behalf of another. Rather, evidence to this effect, at most, creates apparent authority, and an agency

---

(Footnote continued from previous page.)
absence in a particular jurisdiction, at issue in *Shamrock*, bears no relation to inquiries into the authority to act for another. Further, the *Shamrock* court's conclusion actually supports the position, discussed below, that *actual*, *not apparent or ostensible*, authority must be found for service of process upon an agent to be effectual.

relationship deemed sufficient for service of process must be based on actual authority, not apparent authority.[7]

Tullis v. Federated Mutual Insurance Co., 570 N.W.2d 309 (Minn. 1997), is on point. In that case we considered, under Rule 4.03(c), whether the purported agent served by the plaintiff—James Priebe—was a "managing agent" and therefore "one who reasonably could be expected to inform the corporation of the service." 570 N.W.2d at 311. The plaintiff claimed that Priebe's representation to the process server that he was an "executive director" was sufficient evidence to establish that Priebe was a managing agent. Id. at 312-13. We categorically rejected that claim, holding it was "*not sufficient for plaintiff simply to claim* that Priebe, as an individual, possesse[d] the rank and character such that he reasonably could be expected to apprise the corporation of the service." Id. at 312 (emphasis added). Rather, the plaintiff "*must examine* the position Priebe held in the corporation at the time of service and the duties and responsibilities that accompany that position," and "*must show* that the position of occupational therapist is of sufficient rank and character." Id. at 312-13 (emphasis added). Plaintiff's reliance on *Priebe's representation*, we held, "failed to make such a showing." Id. at 313.

---

[7] See e.g., *Hockemeyer v. Pooler*, 268 Minn. 551, 565, 130 N.W.2d 367, 377 (1964) (noting that actual authority consists of express and implied authority, with express authority provided by an express grant by the principal, and implied authority including "only those powers that are essential to carrying out the duties expressly delegated"); *Kopio's, Inc. v. Bridgeman Creameries, Inc.*, 248 Minn. 348, 354, 79 N.W.2d 921, 925 (1956) (explaining that there must be an "actual" agency relationship for service of process); *Derrick*, 244 Minn. at 148 n.1, 69 N.W.2d at 127 n.1 (stating that agency by estoppel or implication of law is insufficient for service of process).

We also considered whether Priebe was an agent impliedly authorized to receive service of process on the corporation's behalf. *Id.* at 313-14. We again rejected plaintiff's claim, noting that "[i]mplied authority is actual authority, circumstantially proved, and is to be construed under common law principles of agency." *Id.* at 313. We then concluded that the plaintiff "offered *no circumstantial evidence* tending to prove" that the "*principal*[] *granted* implied authority to Priebe to accept service of process on its behalf." *Id.* (emphasis added). Specifically, we reasoned that the plaintiff's "reliance upon Priebe's statement to the process server" was "misplaced," because that "misrepresentation, at most, only reaches the level of apparent authority to receive service." *Id.* Implied authority, by contrast, "is inferred from *a course of dealing between the principal and the agent*." *Id.* (emphasis added). Indeed, we explained that, under common law principles of agency, "[a]ll authority must be traced to the principal's dealings with the agent; *it cannot be inferred from the agent's dealings with third parties*." *Id.* (emphasis added) (citing *Winkel v. Eden Rehab. Treatment Facility, Inc.*, 433 N.W.2d 135, 139 (Minn. App. 1988)). Accordingly, we held that it was "not enough [for the plaintiff] to point to Priebe's self-identification as executive director to the process server." *Id.*; *see also Winkel*, 433 N.W.2d at 138-40 (reaching the same result under facts closely analogous to those here).

The evidence adduced by the DeCooks in this case, taken as true, at best establishes that Graham had apparent authority to accept service for the individual defendants. But *Tullis* unambiguously holds that apparent authority is not, and cannot, be enough for effective service of process. Instead, what is required is actual authority

established either by circumstantial proof gleaned from the course of dealing between the principal and agent, not the agent and a third party, or proof directly from the principal. None of the evidence relied on by the court fits the bill and, therefore, the district court's finding that there is "nothing in the record" to support Graham's authorization to accept service on behalf of the individual defendants was not clearly erroneous. *See Tullis*, 570 N.W.2d at 313.

The court's attempt to distinguish *Tullis* by suggesting that evidence of this nature is only insufficient if controverted by an opposing affidavit is unconvincing. First, the plaintiff's well-pleaded facts and evidence are taken as true, irrespective of whether a contradictory affidavit is submitted. *See Tullis*, 570 N.W.2d at 314; *Winkel*, 433 N.W.2d at 140; *Hunt v. Nev. State Bank*, 285 Minn. 77, 82-83, 172 N.W.2d 292, 296-97 (1969). But more importantly, the *Tullis* court did not cast its decision in light of the defendant overcoming the plaintiff's prima facie evidence of effective service. Rather, the *Tullis* court framed its reasoning entirely in terms of what the plaintiff had failed to show from the start; namely, an *actual* agency relationship and therefore *effective* service upon that purported agent. Specifically, the *Tullis* court concluded that the plaintiff could not "simply claim" authorization or "point to" a purported agent's representations but "must examine" the facts and "must show" prima facie evidence of effective service upon an appropriately authorized agent. *See* 570 N.W.2d at 312-13. The plaintiff, in *Tullis*, "failed to make such a showing." 570 N.W.2d at 313-14. The DeCooks have failed in the same way. *See also, e.g.*, *Green v. Missouri*, 734 F. Supp. 2d 814, 856 (E.D. Mo. 2010) (stating that the issue was whether the plaintiff "ha[d] provided sufficient

evidence" of a purported agent's authorization to receive service of process for the defendants, that the affidavit of plaintiff's process server stating that the agent claimed he was authorized was "insufficient to establish that the . . . individual was authorized," and therefore "[the plaintiff] ha[d] failed to provide any evidence that [the defendants] appointed the unnamed individual to accept service for them"), *aff'd sub nom. Green v. Nocciero*, 676 F.3d 748 (8th Cir. 2012).

In *Tullis*, we acknowledged a "concern for fairness" when representations are made by a purported agent and relied upon by the plaintiff to his or her serious detriment. 570 N.W.2d at 313. This "concern for fairness," however, must be counterbalanced with principles of due process; that is, ensuring plaintiffs continue to take steps to effect service in a way that is "reasonably calculated" to reach the *interested* party. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 318 (1950); *see also Wold v. J.B. Colt Co.*, 102 Minn. 386, 389-90, 114 N.W. 243, 243 (1907). Accordingly, in *Tullis*, we refused to "depart from case law which establishes an employee's representations to a process server are inadequate to find authority to accept service." 570 N.W.2d at 313-14. The result reached by the court today permits the plaintiff to shirk a duty of diligence by relying upon the unconfirmed assertions of a purported agent to the detriment of the requirements of due process.

### III.

In sum, the court's opinion is not in accordance with our rules of civil procedure, old or new. The DeCooks failed to provide the district court with either a valid acknowledgment of service or a writing signed or electronically submitted by the

individual defendants. More specifically, the DeCooks failed to present sufficient evidence of effective service to meet their burden of production and shift the burden of proving otherwise to the individual defendants. On the contrary, the "evidence" produced by the DeCooks and relied on by the court, at best, evinces apparent authority, which we have categorically held insufficient to establish effective service of process. The court's conclusion is an unwarranted upheaval of settled agency law. The district court correctly found "nothing in the record" to support Graham's actual authority as an agent to receive service of process for the individual defendants. Accordingly, I conclude that service of process was ineffectual.

GILDEA, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Dietzen.

STRAS, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Dietzen.